WILLIAM NELSON *v.* JAMES R. CONNER and others.

Plaintiff having a judgment against defendants as commercial partners, seized under a *fi. fa.* a judgment obtained in a court of original jurisdiction by two of the partners against the third in an action for a settlement of the partnership. One of the partners, who had been appointed a receiver in the last suit, having, as receiver, enjoined the *fi. fa.*, deposited a sum of money in court to represent the bond and surety required for the injunction. The judgment seized being reversed on appeal, the injunction was discontinued without objection on the part of the plaintiff, who, under a second *fi. fa.* seized the money deposited in court, and took a rule on the defendants to show cause why it should not be paid to him towards the satisfaction of his execution. *Held,* that the rule should be discharged; that, had a bond been executed, it ought to have been signed by the party as receiver; that the deposit was in lieu of it; that, unless the contrary be shown, it must be presumed that the money deposited was in the parties hands as receiver; that, as such, he was an officer of the court below, in the nature of a judicial sequestrator, and bound to account to it for all the funds coming into his hands; and that the court from which the *fi. fa.* was issued, had no power to withdraw the funds from the control of the court in whose custody they were.

APPEAL from the Commercial Court of New Orleans, *Watts,* J. *Elmore* and *W. W. King,* for the appellant.

*Bonford* and *Roselius,* contra.

SIMON, J. The record discloses the following facts. The plaintiff, having obtained a judgment against the defendants as commercial partners, an execution was issued thereon, which was levied upon a certain judgment obtained in the District Court by Whitehead and Gridley, against their co-partner and co-defendant, Conner. After this seizure was made, Whitehead, as receiver of the firm of Conner, Gridley & Co., under the appointment of the District Court, as well as in his individual capacity, applied for a writ of injunction to prevent the sale of said judgment; and as he represented himself unable to give the security required by law, the Judge in granting the writ, required that, instead of giving his bond with the usual surety, he should deposit with the Clerk of the court the sum of *seven hundred dollars,* to represent the bond and security which he was bound to furnish. The judgment seized was subsequently reversed by the Supreme Court; whereupon, Whitehead discontinued his injunction suit, without any objection on the part of the plaintiff's coun-

sel in the first suit; and the order of dismissal was accordingly
granted and entered.   After this proceeding, a new execution was
issued, which was levied upon the amount deposited with the
Clerk, as having been so deposited by Whitehead; where-
upon a rule was taken by the plaintiff on the Clerk of the Court,
*a qua*, and on said Whitehead, and M. & B. Mullen & Co., who
are stated to have an interest in the question, to show cause why
said sum should not be paid to the plaintiff in part satisfaction of
his execution.   This rule was served on the 20th of June, 1843,
and on the 26th of the same month, the execution, by virtue of
which the seizure had been made, was returned by the Sheriff
stating that no part of the sum seized had come to his hands, and
that no other property had been found.   In the meantime the rule
was tried, and the Judge, *a quo*, being of opinion that the money
in controversy could not be legally seized, overruled the plaintiff's
motion, from which judgment the latter appealed.

The record shows, it is true, that the injunction suit in which
the amount seized was required to be deposited, was originally
instituted by Whitehead acting as receiver in the matter of
*Whitehead & Gridley* v. *J. R. Conner*, as well as in his individual
capacity; but the proceedings had in the said suit show, that the
same was really brought and conducted throughout by White-
head, for the benefit of the parties concerned in the suit in which
he was appointed receiver, and in compliance with the obligations
by him contracted as such, under the appointment of the District
Court.   His individual interest therein did not extend further than
as one of the firm for whose benefit he was acting as receiver;
and it is obvious from the object of the injunction suit, and from
the proceedings had therein, that if he, Whitehead, had been able
to furnish the bond required by law, it ought to have been signed
by him in his capacity of receiver, as given for the purpose of ob-
taining the injunction, which he states, was necessary for the pro-
tection of *the rights of all concerned.*   The amount deposited by
him stood in lieu of the bond; and, until the contrary appears,
we must presume that the money deposited was in his hands as
receiver, and that it was so used by him in the exercise of his
functions, and in due course of his administration of the concerns,

Nelson v. Conner and others.

under the appointment of the court before which he is bound to render his account.

With this view of the capacity in which Whitehead acted, when he deposited the money in controversy, we concur with the Judge, *a quo*, in the opinion that, as receiver, Whitehead was an officer of the District Court, in the nature of a judicial sequestrator, and bound to account before that court for all the funds which may have come to his hands as such, and which may be subject to distribution and payment of costs and privileged debts in that court. If so, how could the Commercial Court dispose of a fund which is in the keeping and custody of another tribunal? What authority would the court, *a qua*, have to withdraw the amount seized from the mass of the funds under the control of the District Court? None whatever; and such a proceeding would have the effect not only of creating great confusion among the legal pretensions of the parties concerned, but also of injuring the rights of those who are not parties to this suit. This cannot be permitted, particularly as it would be interfering with a matter belonging to another jurisdiction; and as it would, perhaps, prevent the receiver from complying with the exigencies and obligations of the bond, which he must have given to the court by which he was appointed.

But another proposition has been urged by the plaintiff's counsel, to wit, that if it be true, that the money seized was the property of Conner, Gridley & Co., and came into Whitehead's possession, as receiver, it may be seized on an execution against Conner, Gridley & Co. This might, perhaps, be true, if the execution was levied on the funds in the hands of the receiver, and the proceedings carried on contradictorily with all the parties concerned before the court under whose appointment such funds were received. But we must abstain from expressing any opinion on this point, as all the parties interested therein, are not before us, and as, for the reasons already adduced, the funds seized cannot be withdrawn in this manner from the possession of the receiver, and must go back to, and be replaced under the control of the District Court. Certain it is, that if the money seized must, or may be applied ultimately to the satisfaction of the judgment obtained

by the plaintiff against Conner, Gridley & Co., the court, *a qua*, has, in our opinion, no authority to order it.

Another serious question might, perhaps, have been raised from the fact disclosed by the record, that the execution, by virtue of which the money in controversy was seized in the hands of the Clerk, was returned by the Sheriff immediately after the judgment appealed from was rendered, stating that *no part of the sum* seized had come to his hands, and that no other property was found. This return was made before the application of the plaintiff for an appeal from the judgment discharging the rule, and might, perhaps, be considered as an acquiesence in the judgment appealed from, as, after said return, the Sheriff had no further authority to receive the money seized from the Clerk, if our judgment was in favor of the plaintiff; and as, in consequence of said return, said plaintiff was at liberty to issue another execution and seize other property. Whatever may be the legal consequence of this unadvised and preposterous return, it is at least irregular, as only one month and eleven days had run out; and although we are not called upon to express any opinion on this point, which it is unnecessary for us to examine, we have thought proper to notice it, in order that parties litigant, or their counsel, may henceforth be more watchful over the acts of the officers by them employed, and thereby avoid, if not the loss of their rights, at least a new subject of further litigation.

*Judgment affirmed.*